## In re SANTA ROSA COUNTY UTILITIES COMPANY, Inc.
### No. 6734-W.

Railroad & Public Utilities Commission.
April 12, 1963.

Richard H. Merritt, Pensacola, for Santa Rosa County Utilities Company, Inc.

Churchill Mellen, City Attorney, for City of Gulf Breeze.

James L. Graham, Jr., Assistant General Counsel, for the commission staff and in the general public interest.

Chairman EDWIN L. MASON, Commissioners JERRY W. CARTER and WILBUR C. KING each participated in the disposition of this matter.

## BY THE COMMISSION.

Pursuant to required legal notice, a public hearing was held in this matter on November 7, 1962 in the commission hearing room in Tallahassee. Having considered the entire record herein, the commission now enters its order in the premises.

This proceeding was instigated by the commission on its own motion to investigate the rates and services of the subject utility, hereinafter referred to as the company. At the direction of the commission the company presented its financial situation as in a proceeding instituted for approval of a change in rates and presented several witnesses who testified on this subject and also in connection with service problems being encountered by the company. Testimony was also heard from several of the company's customers with regard to their complaints about its rates and the quality of the water which it supplied.

The present owners of the company acquired it in April, 1959. Prior to that time there had been several other changes of ownership. Although the company provides both water and sewer service, only the water operation is presently under the jurisdiction of the commission, the sewer operation having too few connections to bring it under the terms of chapter 367, Florida Statutes. At the end of the test year used in this case there were 581 water customers and 67 sewer customers being served by the company. During the test year, and apparently for several years past, the company was shown to have operated at a loss.

Our calculation of the rate base for the company's water operation is not materially different from that advanced by the company. Our major adjustment was the inclusion in the rate base calculation of an amount in excess of $2,000 for income tax lag. With this adjustment and a minor adjustment in the cash working capital requirement we have approved a rate base figure of $259,557.68.

In making its presentation at the hearing the company proposed increased rates which, if they had been in effect during the test year, would have increased its gross revenue from its water operation by 99.77%. Such an increase would result in total operating revenues of $65,196.22. After minor and virtually offsetting adjustments to operating expenses we have approved total operating expenses in the amount of $41,320.65 which results in a net operating income under the proposed rates of $23,875.57. This would constitute a rate of return on the approved rate base figure of 9.20%.

Having considered the company's capital structure and its costs in securing such capital, we must conclude that a 9.20% rate of return is excessive and that in consideration of all the evidence

168

before us a rate of return of 5.64% would be fair, reasonable, and compensatory. Since the company's losses on its sewer operations would mean that it would have to pay no income tax even though the water operation under the proposed rates would show a profit, we find that a rate of return of 5.64% could be realized on a total operating revenue of $51,294.62.

While the revenue required in order to realize a return of 5.64% is 52.90% greater than the company's present total revenue from its water operation, we were convinced from the evidence before us that the quality of its service could not be improved to acceptable standards unless the company were allowed such increases in rates.

It is therefore ordered that Santa Rosa County Utilities Company, Inc. be and it is hereby authorized to put into effect increased rates and charges as to all service rendered on and after the 31st day following the date hereof which will generate total operating revenues on the basis herein considered of $51,294.62, provided, however, that the necessary tariff changes have in the meantime been filed and approved; otherwise, not until such approval is given.